UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------X

UNITED STATES OF AMERICA,

    - against -

HECTOR CRUZ,

              Defendant.

------------------------------------------X

04 Cr. 1146-02 (RWS)

SENTENCING OPINION

**Sweet, D.J.**

On September 1, 2005, Defendant Hector Cruz ("Cruz") appeared before the Honorable Michael H. Dolinger of this District and pleaded guilty to one count of conspiracy to import cocaine and one count of conspiracy to distribute and possess with intent to distribute cocaine. For the reasons set forth below, Cruz will be sentenced to 135 months of imprisonment, to be followed by a five-year term of supervised release. Cruz also will be required to pay a special assessment of $200.

**Prior Proceedings**

Cruz was arrested on September 4, 2004 and has remained in custody without bail since that time. An indictment was filed in the Southern District of New York on October 14, 2004, charging that from July 2004 through September 2004, Cruz, Osiris Diaz, Luis Ruiz, and others (1) conspired to import into the United States five kilograms and more of cocaine, in violation of 21 U.S.C. §§

1

812, 952, 960(b)(3), and 963 ("Count One"), and (2) conspired to distribute and possess with intent to distribute five kilograms and more of cocaine in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(A), and 846 ("Count Two"). On September 1, 2005, Cruz appeared before the Honorable Michael H. Dolinger of this District and pleaded guilty to his criminal conduct as charged in Counts One and Two of the indictment. Defendant's sentencing is scheduled for May 10, 2006.

**The Sentencing Framework**

In accordance with the Supreme Court's decision in <u>United States v. Booker</u>, 543 U.S. 220 (2005), and the Second Circuit's decision in <u>United States v. Crosby</u>, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the advisory Sentencing Guidelines (the "Guidelines") established by the United States Sentencing Commission. Thus, the sentence to be imposed here is the result of a consideration of:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed --

   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   (B) to afford adequate deterrence to criminal conduct;

2

>    (C) to protect the public from further crimes of the defendant; and
>
>    (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for --
>
>    (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines ...;
>
> (5) any pertinent policy statement ... [issued by the Sentencing Commission];
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not. See Crosby, 397 F.3d at 114-15.

**The Defendant**

The Court adopts the facts set forth in the Probation Department's Presentence Investigation Report ("PSR") with respect to Cruz's personal and family history.

3

**The Offense Conduct**

On September 2, 2004, while conducting surveillance in the Washington Heights section of Manhattan, agents of the Drug Enforcement Agency ("DEA") observed Osiris Diaz ("Diaz") driving a gold colored mini-van (the "Gold Van"). The agents then followed Diaz as he drove the Gold Van from Manhattan to a storefront in Paterson, New Jersey, where he exited the van and entered the business. The sign at the storefront read "Cruz Refrigeration."

On September 4, 2004, DEA agents were again conducting surveillance in Washington Heights and observed Diaz driving the Gold Van. Agents also observed Luis Ruiz ("Ruiz") and another individual enter a green colored mini-van (the "Green Van"). Prior to entering the Green Van, Ruiz appeared to be conversing with Diaz. The Gold Van, the Green Van, and another car left the area together and DEA agents followed the vehicles. Although they took different routes to the location, both vans and the car were eventually seen in the vicinity of a three-family house located at 177 Park Avenue in Paterson, New Jersey. The Green Van and the car parked in front of the house, while Diaz parked the Gold Van approximately a block away.

Approximately 10 minutes after the vans arrived in the area, Cruz arrived at the above address and entered the building with Ruiz, among others. DEA agents then observed Cruz and Ruiz

4

load four large boxes into the Green Van and depart the area.

As it drove away, the Green Van momentarily stopped, whereupon law enforcement officials approached the Green Van. The four boxes were clearly visible in the back seat. One of the boxes had spilled open and what appeared to be kilogram bricks were visible inside the box. After seeing these bricks, which were packaged in a manner consistent with the way kilograms of cocaine are often packaged, DEA agents searched the car and discovered that the four boxes contained approximately 102 kilogram bricks. One of the bricks was opened, and found to contain a tightly-packed, white powdery substance that later was identified as cocaine.

After the discovery of the cocaine, Cruz, Ruiz, and Diaz, who had been stopped in the area, were placed under arrest. In a post-arrest statement, Cruz informed DEA agents that the cocaine had been imported from Mexico and that Diaz was in charge of receiving the shipment of cocaine. Cruz also told agents that more cocaine was located at his business, Cruz Refrigeration, and he consented to a search of that business.

At Cruz Refrigeration, agents found nine more boxes containing approximately 240 kilograms of cocaine. Agents also found four large metal crates; one crate was opened and it contained approximately fifty kilogram bricks of what appeared to be cocaine. Cruz informed agents that the other three crates also

contained 50 kilograms of cocaine each.

Cruz was arrested on September 4, 2004. According to the Government, he is being held accountable for the trafficking of at least 542 kilograms of cocaine. In a proffer session with the Government on March 29, 2006, Cruz stated that his role in the conspiracy was to receive large deliveries of cocaine and store them in his business before delivering the drugs to co-conspirators. In total, Cruz admitted receiving approximately 1500 kilograms of cocaine.

## The Relevant Statutory Provisions

The mandatory minimum term of imprisonment for Counts One and Two is ten years; the maximum term of imprisonment is a term of life, pursuant to 21 U.S.C. §§ 963 and 846.

A term of at least five years' supervised release per count is required if a sentence of imprisonment is imposed, pursuant to 21 U.S.C. §§ 963 and 846. Such terms of supervised release run concurrently, pursuant to 18 U.S.C. § 3624(e).

Cruz is not eligible for probation because the instant offense is one for which probation has been expressly precluded by statute, pursuant to 21 U.S.C. §§ 963 and 846.

Pursuant to the Violent Crime Control and Law Enforcement Act of 1994, all offenders on probation, parole or supervised release for offenses committed after September 13, 1994, are required to submit to one drug test within fifteen days of commencement of probation, parole or supervised release and at least two drug tests thereafter for use of a controlled substance, unless ameliorated or suspended by the court due to its determination that the defendant poses a low risk of future substance abuse as provided in 18 U.S.C. §§ 3563(a)(5) and 3583(d).

The maximum fine for Counts One and Two is $4,000,000 per count, pursuant to 21 U.S.C. §§ 963 and 846. A special assessment in the amount of $200 is mandatory. 18 U.S.C. § 3013.

Pursuant to 21 U.S.C. § 862(a)(1)(A), upon a first conviction for distribution of a controlled substance, a defendant may be declared ineligible for any or all Federal benefits for up to five years as determined by the Court.

**The Guidelines**

The November 1, 2005 edition of the United States Sentencing Commission Guidelines Manual has been used in this case for calculation purposes, pursuant to section 1B1.11(a). Counts One and Two are grouped together for calculation purposes. § 3D1.2(d).

7

The Guideline for violations of 21 U.S.C. §§ 963 and 846 is found in section 2D1.1. Based on information provided by the Government, Cruz is responsible for the trafficking of at least 542 kilograms of cocaine. Cruz has admitted to receipt and storage of approximately 1500 kilograms of cocaine. As specified in the Drug Quantity Table under section 2D1.1(c)(1), the base offense level is 38.

Cruz is eligible for the two-level reduction under the safety valve provision. § 5C1.2(a)(1)-(5).

Basely on his plea allocution, Cruz has shown recognition of responsibility for the offense. Pursuant to section 3E1.1(a), the offense is reduced two levels. Further, because Cruz's timely notification of his intention to plead guilty has allowed the Government to allocate its resources more efficiently, and because the offense level is sixteen or greater, the offense level is reduced one additional level. § 3E1.1(b).

**Disputed Adjustment**

Cruz argues that he is entitled to a reduction in the adjusted offense level because he played a minor role in the conspiracy, pursuant to U.S.S.G. § 3B1.2(b). Specifically, Cruz contends that he did not plan or in any way manage the criminal

8

scheme, nor did he play any role in the sale of the drugs. Cruz additionally contends that, although he was paid to store the cocaine, he did not have any ownership interest in it, and thus did not share in the profits earned from its sale. The government argues that Cruz is not entitled to a minor-role adjustment, as he played an essential role in the conspiracy and, in light of the fact that he was entrusted with hundreds of thousands of dollars worth of cocaine at any given time, was undoubtedly viewed as a reliable participant.

A defendant has the burden of proving by a preponderance of the evidence that he is entitled to a minor-role adjustment under section 3B1.2. See United States v. Yu, 285 F.3d 192, 200 (2d Cir. 2002); United States v. Castano, 234 F.3d 111, 113 (2d Cir. 2000); United States v. Colon, 220 F.3d 48, 51 (2d Cir. 2000). As the Second Circuit has explained, a minor-role reduction "will not be available simply because the defendant played a lesser role than his co-conspirators; to be eligible for a reduction, the defendant's conduct must be `minor' . . . as compared to the average participant in such a crime." United States v. Carpenter, 252 F .3d 230, 234 (2d Cir. 2001) (quoting United States v. Rahman, 189 F.3d 88, 159 (2d Cir. 1999)); accord Yu, 285 F.3d at 200. The district court's analysis of the defendant's role in criminal activity is, accordingly, "highly fact-specific and depends on the nature of the defendant's relationship to the other participants, the importance of the defendant's actions to the success of the

9

venture, and the defendant's awareness of the nature and scope of the criminal enterprise." Carpenter, 252 F.3d at 234 (quoting United States v. Shonubi, 998 F.2d 84, 90 (2d Cir. 1993).

Cruz has not established facts demonstrating that he filled a minor role in the conspiracy. To the contrary, Cruz was a central figure, entrusted with hundreds of kilograms of cocaine at a time. The Second Circuit has recognized that a defendant's personal responsibility for significant quantities of narcotics is inconsistent with an application for a role reduction. See United States v. Garcia, 920 F.2d 153, 155 (2d Cir. 1990) (upholding district court's conclusion that courier was "essential to the transaction," and ineligible for role reduction, where courier "was personally entrusted with and ultimately delivered to the undercover officer . . . cocaine worth $23,000"). Cruz played a role far greater than that of the courier in Garcia. He not only received extremely large quantities of cocaine on a regular basis, but stored them and later distributed the cocaine to others. In light of the foregoing, Cruz has not demonstrated that he qualifies for a minor-role reduction of his offense level.

**Remaining Calculations**

The Defendant's resulting adjusted offense level is 33.

Cruz admitted to one prior criminal conviction for

driving while intoxicated. He paid a fine of $785 and had his driving privileges suspended for six months. This prior conviction results in one criminal history point, and thus Cruz has a Criminal History Category of I.

Based on a total offense level of 33 and a Criminal History Category of I, the Guidelines range for imprisonment is 135 to 168 months.

The Guidelines range for a term of supervised release is five years, the minimum required by statute, per count, pursuant to section 5D1.2(c).

The penalties applicable to Counts One and Two preclude a sentence of probation, pursuant to section 5B1.1(b)(2).

The Guidelines fine range for the instant offense is from $20,000 to $8,000,000. § 5E1.2(c)(1), (4). Subject to the defendant's ability to pay, in imposing a fine, the Court shall consider the expected costs to the Government of any imprisonment, probation, or supervised release. § 5E1.2(d)(7). The most recent advisory from the Administrative Office of the United States Courts suggests a monthly cost of $1,931.97 to be used for imprisonment, a monthly cost of $292.21 for supervision, and a monthly cost of $1,590.66 for community confinement.

Pursuant to section 5F1.6, the Court may deny eligibility for certain Federal benefits of any individual convicted of distribution or possession of a controlled substance.

## The Remaining Factors of 18 U.S.C. § 3553(a)

Having engaged in the Guideline analysis, this Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) in order to impose a sentence sufficient, but not greater than necessary, as is required in accordance with the Supreme Court's decision in Booker, 543 U.S. 220, and the Second Circuit's decision in Crosby, 397 F.3d 103. Pursuant to all of the factors, it is hereby determined that a guideline sentence is warranted.

## The Sentence

For the instant offense, Cruz is hereby sentenced to 135 months of imprisonment on each of Counts One and Two, to run concurrently, followed by a five-year term of supervised release.

Since Cruz has been detained without bail since his arrest, he is not a candidate for voluntary surrender. 18 U.S.C. § 3143(a)(2). Cruz is directed to report to the nearest Probation Office within seventy-two hours of release from custody. It is

recommended that the Defendant be supervised by the district of residence.

As mandatory conditions of his supervised release, Cruz shall: (1) not commit another federal, state, or local crime; (2) not illegally possess a controlled substance; (3) not possess a firearm or destructive device; and (4) cooperate in the collection of DNA as directed by the probation officer. The mandatory drug testing condition is suspended due to imposition of a special condition requiring drug treatment and testing.

The standard conditions of supervision (1-13) shall be imposed, along with the following special condition: Cruz shall participate in a program approved by the United States Probation Office, which program may include testing to determine whether the defendant has reverted to using drugs or alcohol. The Court authorizes the release of available drug treatment evaluations and reports to the substance abuse treatment provider, as approved by the Probation Officer. The defendant will be required to contribute to the costs of services rendered (co-payment), in an amount determined by the probation officer, based on ability to pay or availability of third-party payment.

In consideration of all the factors set forth in 18 U.S.C. § 3572(a), it does not appear that the defendant has any assets with which to pay a fine, so the fine in this case shall be

waived. However, Cruz shall forfeit to the United States any and all property constituting and derived from any proceeds he obtained directly or indirectly as a result of the conduct to which he allocuted. This property shall include, but is not limited to, approximately $4000 seized from his residence on September 4, 2004.

A special assessment of $200, payable to the United States, is mandatory and shall be due immediately.

The terms of this sentence are subject to modification at the sentencing hearing set for May 10, 2006.

It is so ordered.

**New York, NY**
**May 7, 2006**

_____
ROBERT W. SWEET
U.S.D.J.